IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KIRT STEVENS, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | Case No. 05-647-CV-W-GAF |
| ) | |
| BROAD REACH COMPANIES, L.L.C., ) | |
| and PAUL R. PLACHE, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Presently before the Court is a Motion to Dismiss filed by the Defendants, Broad Reach Companies, L.L.C. ("BRC") and Paul R. Plache ("Plache"). (Doc. #21). The Defendants argue that the present action should be dismissed because this Court is not empowered to resolve inventorship disputes in patent applications; rather, such power is vested solely in the Director of the Patent and Trademark Office pursuant to 35 U.S.C. § 116. Id. The Plaintiff, Kirt Stevens ("Stevens"), contends that the present dispute cannot be resolved pursuant to 35 U.S.C. § 116 and the Court has subject matter jurisdiction to grant declaratory relief as to inventorship in a patent application. (Doc. #35). After careful consideration of the facts and arguments presented by the parties, the Court finds that the present action is governed by 35 U.S.C. § 116, which does not provide a private right of action in federal court for resolution of inventorship disputes in a patent application. Accordingly, the Defendants' Motion to Dismiss is GRANTED.

## DISCUSSION

**I.  Facts**

The present action presents a dispute regarding the inventorship of a liquid polymer blender, referred to as a "fluid blending apparatus." (Doc. #1, ¶ 13). Stevens contends that Plache approached him regarding the preliminary design of a fluid blending apparatus and throughout 2003 and 2004 Stevens rendered design and engineering services which were sufficient to confer inventor status on him pursuant to U.S. patent laws. (Doc. #1, ¶¶ 13-14).

Despite Stevens' contributions to the design and engineering of the fluid blending apparatus, Plache filed a patent application on October 7, 2004 for the fluid blending apparatus without informing Stevens and without Stevens' consent. (Doc. #1, ¶ 16). Plache declared that he was the sole inventor of the fluid blending apparatus in the patent application. (Doc. #1, ¶ 17). Contrarily, Stevens claims that he is the sole inventor of the fluid blending apparatus or, alternatively, that he should at least be recognized as a joint inventor in the patent application. (Doc. #1, ¶¶ 18, 20). Stevens asserts that Plache's failure to name him as an inventor in the patent application was an error and was without deceptive intent on the part of Stevens. (Doc. #1, ¶¶ 19, 20). Stevens contends that Plache has denied Stevens his rights in the patent application and has refused to acknowledge Stevens' status as an inventor. (Doc. #1, ¶ 27).

Consequently, Stevens filed the present action. In Count I of his Complaint, Stevens seeks a declaratory judgment that he is the "first and original inventor of the fluid blending apparatus" pursuant to 35 U.S.C. § 116. (Doc. #1, ¶ 30). Stevens further asserts that Plache's failure to name him as the sole inventor constitutes an error to which Stevens is entitled to damages pursuant to 35 U.S.C. § 256. (Doc. #1, ¶ 32). Similarly, in Count II of his Complaint, Stevens seeks a declaratory judgment that he is "at least a joint inventor pursuant to 35 U.S.C. § 116 of the fluid blending apparatus." (Doc. #1, ¶ 39). Stevens further asserts that this nonjoinder constitutes an error to which he is entitled to damages pursuant to 35

2

U.S.C. § 256. (Doc. #1, ¶ 41). Stevens also asserts claims for fraud, improper assignment and misappropriation of trade secrets. (Doc. #1, ¶¶ 45-95).

In the present Motion, the Defendants assert that Stevens' lawsuit should be dismissed because this Court does not have jurisdiction to correct inventorship in a pending patent application; rather, such power is vested solely in the Director of the Patent and Trademark Office (PTO) under 35 U.S.C. § 116. (Doc. #21). The Defendants contend that each of Stevens' claims require the Court to interfere with the PTO's exclusive jurisdiction over a pending patent application. Id. The Defendants also urge the Court to decline to exercise supplemental jurisdiction over any state law claims which the Court finds do not directly interfere with the PTO's exclusive jurisdiction over the pending patent application for the fluid blending apparatus. Id.

Stevens responds by arguing that the Court has subject matter jurisdiction over the claims in the Complaint because Stevens is seeking declaratory relief as to inventorship in the patent application. (Doc. #35). Stevens contends that the dispute between the parties cannot be resolved pursuant to 35 U.S.C. § 116 because "correction of the patent under 35 U.S.C. § 116 requires both the consent of the assignee and the executed declaration of both inventors on the same form." Id. Because the Defendants assert that there was no error in the patent application or in the listing of inventors, Stevens claims that the PTO cannot resolve the dispute. Id.

**II.    Standard and Analysis**

The present Motion requires the Court to decide whether federal law empowers a federal court to resolve inventorship disputes in patent applications. This Court finds that federal law does not provide

3

a private right of action in federal court to resolve inventorship disputes in patent applications. Accordingly, the present action must be dismissed.

### A. *The amendment of inventorship in a patent application is governed by 35 U.S.C. § 116.*

United States patent law requires all joint inventors be listed on a patent application. *See* 35 U.S.C. § 116 (§ 116). If the patent application incorrectly identifies the inventors, the patent application may be amended pursuant to § 116 which provides in relevant part:

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director may permit the application to be amended accordingly, under such terms as he prescribes.

Section 116 explicitly empowers the Director of the PTO to amend a patent application with regard to inventorship. However, § 116 does not explicitly confer any authority on the federal courts to take any action with respect to patent applications.

If the dispute regarding inventorship does not arise until after the patent has been issued, 35 U.S.C. § 256 (§ 256) provides for the correction of issued patents:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, *the **Director** may, on application of all parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.*
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. *The **court** before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.*

4

(emphasis added). Section 256 explicitly empowers both the Director of the PTO and the federal courts to remedy inventorship errors in issued patents.

Here, no patent for the fluid blending apparatus has been issued. Accordingly, Stevens is seeking to alter or amend the patent application for the fluid blending apparatus to include himself as the sole inventor, or alternatively as the joint inventor. Stevens, implicitly recognizing that this Court does not have the authority to alter or amend patent applications, seeks a declaratory judgment directing Plauche to take the necessary steps to correct the inventorship of the patent application. As Stevens' lawsuit involves a pending patent application, rather than an issued patent, this Court finds that § 116 governs the relief sought.

Stevens argues his lawsuit cannot be resolved pursuant to § 116 because "correction of a patent under § 116 requires both the <u>consent</u> of the assignee and the <u>executed declaration</u> by both inventors on the same form." (Doc. #35) (emphasis in original). Stevens contends that because BRC, the assignee, has refused to consent to the amendment and Plache refuses to acknowledge Stevens' inventive efforts, the Director of the PTO cannot resolve the disputed inventorship. However, Stevens offers no alternative federal statute under which his claim to amend a pending patent application arises. Accordingly, the Court finds that Stevens' claims to amend the pending patent application for the fluid blending apparatus arise under § 116 rather than some other unidentified federal statute.

> **B.    *Section 116 does not provide a private right of action in federal court to resolve inventorship disputes in patent applications.***

The Defendants contend that this Court does not have the authority pursuant to § 116 to alter or amend the patent application. Rather, the Defendants argue that the Director of the PTO is vested with the sole authority to correct inventorship errors in patent applications. In support of their position, the

Defendants rely on Eli Lilly and Company v. Aradigm Corporation, 376 F.3d 1352 (Fed. Cir. 2004). Eli Lilly, a pharmaceutical company, filed suit seeking to have two of its scientists recognized as joint inventors on the insulin analog "lispro." Eli Lilly, 376 F.3d at 1354. The Federal Circuit noted that at the time Eli Lilly filed the action, the subject patent had not yet been issued. Id. at 1357, fn 1. Eli Lilly initially filed the action seeking a declaratory judgment establishing Eli Lilly's scientists as inventors on the defendant's patent applications pursuant to § 116. Id. With respect to declaratory judgments filed under § 116, the Federal Circuit observed: "The text of section 116, however, only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not create a cause of action in the district court to modify inventorship on pending patent applications." Id. Accordingly, the Federal Circuit concluded, "at the time it filed its complaint, [Eli] Lilly did not have a cause of action to challenge inventorship on the '477 patent application." Id. Despite this apparent defect in Eli Lilly's complaint, which was never amended, the Federal Circuit found that in ruling on the defendant's summary judgment motion, the district court effected a constructive amendment of the complaint to assert a claim arising under § 256. Id.

The Sixth Circuit in E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578 (6th Cir. 2003), *cert. denied*, 541 U.S. 1027 (2004) reached a similar result. In Du Pont, the defendant filed a counterclaim for a declaratory judgment asserting that he was the inventor of the subject matter of the patent application. Du Pont, 344 F.3d at 580. The Sixth Circuit affirmed the district court's dismissal of this counterclaim for lack of jurisdiction "on the basis of the language of § 116 and § 256 and their notable differences." Id. at 583. In comparing the language of § 116 and § 256, the Sixth Circuit observed:

> Section 116 does not mention courts, but rather gives discretion to the Director of the PTO to permit amendments to patent applications and to do so under such terms as the Director deems proper. Section 256, by contrast, explicitly mentions the courts and the authority

6

of the courts to compel action by the Director. Comparing these two sections, it is clear that Congress intended to draw a distinction between patent applications and issued patents. While the patent is still in the process of gestation, it is solely within the authority of the Director. As soon as the patent actually comes into existence, the federal courts are empowered to correct any error that the Director may have committed. Such a scheme avoids premature litigation and litigation that could become futile if the Director declined to grant a patent or voluntarily acceded to the claims of the would-be inventor prior to issue.

Id. at 583-84. The appellate court concluded that the district court lacked jurisdiction to consider the defendant's counterclaim, which was governed by § 116 as the subject patent had not yet issued, because § 116 does not empower the federal courts to correct inventorship errors in patent applications. Id. at 584.

Like the claimants in Eli Lilly and Du Pont, Stevens also seeks a declaratory judgment that he is the inventor of the subject matter of a patent application. Stevens' claims are governed by § 116 as they ultimately seek to amend a patent application. As analyzed above, this Court has observed the same lingual distinctions in § 116 and § 256 which led the Sixth Circuit in Du Pont to conclude that federal courts are not empowered to hear suits arising under § 116. Consistent with the decisions in Eli Lilly and Du Pont, this Court finds that it is not empowered to resolve inventorship disputes in patent applications which arise under § 116 and therefore, Stevens claims must be dismissed.

Stevens urges this Court to adhere to the Federal Circuit's 1998 decision in Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318 (Fed. Cir. 1998)[1] in support of his contention that the Court has the authority to decide questions of inventorship in pending patent applications. In Hunter Douglas, the

---

[1] *Overruled in part on other grounds by* Midwest Indus., Inc. v. Karavan Trainlers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999) (holding that the Federal Circuit will apply its own law, rather than the law of the regional Circuit, in determining whether patent law preempts a given state's law).

7

Federal Circuit sought to define the contours of the federal court's subject matter jurisdiction over state law causes of action involving issued patents. Hunter Douglas, 153 F.3d at 1321. The plaintiff in Hunter Douglas asserted a single federal claim seeking a declaratory judgment of noninfringment, invalidity or unenforceability of the defendant's patents and six state law claims. Id. at 1322. The Federal Circuit began its analysis by affirming the district court's dismissal of the plaintiff's single federal claim for lack of jurisdiction. Id. at 1328. The Federal Circuit proceeded to determine whether the district court could exercise subject matter jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1338(a). Id. 28 U.S.C. § 1338(a) provides:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

In conducting its analysis, the Federal Circuit observed that in prior cases it had found that "at least four issues of federal patent law are substantial enough to satisfy the jurisdictional test" including "inventorship issues under 35 U.S.C. §§ 116, 256." Hunter Douglas, 153 F.3d at 1328. In support of this observation, the Federal Circuit cited MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570-71 (Fed. Cir. 1989) and Rustevader Corp. v. Cowatch, 842 F.Supp. 171, 173-74 (W.D. Pa. 1993). Hunter Douglas, 153 F.3d at 1328. Although Stevens denies that § 116 is applicable to his claims and § 256 clearly doesn't apply because the dispute does not involve an issued patent, Stevens relies on this observation by the Federal Circuit in support of his contention that this Court has the authority to hear his lawsuit pursuant to 35 U.S.C. § 1338(a).

In deciding whether it should disregard Eli Lilly and Du Pont in favor of the Federal Circuit's observations in Hunter Douglas, the Court examined the cases upon which Hunter Douglas relied and found that neither case applied § 116. Rather, both cases involved issued patents and, as such, applied § 256. In MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d at 1570, the Federal Circuit considered whether a suit in district court for determination of co-inventorship and correction of a patent under § 256 is considered an action "arising under" the patent laws for purposes of 28 U.S.C. § 1338(a). The Federal Circuit answered this question in the affirmative. In the second case cited in Hunter Douglas, Rustevader Corp. v. Cowatch, 842 F.Supp. at 173-74, a Pennsylvania district court denied a motion to remand a cause of action seeking to resolve questions of ownership of an issued patent. Id. The district court found that in order to determine ownership it must first resolve questions of inventorship pursuant to § 256. Id. Relying on the Federal Circuit's decision in MCV that claims arising under § 256 give rise to jurisdiction under 28 U.S.C. § 1338(a), the court denied remand. Id.

The Court declines to disregard Eli Lilly and Du Pont in favor of Hunter Douglas for a number of reasons. First, the observation in Hunter Douglas that "inventorship issues under 35 U.S.C. §§ 116, 256" give rise to jurisdiction under 28 U.S.C. § 1338(a) is not supported by the legal authority cited. Second, the Federal Circuit's decision in Eli Lilly came six years after the Hunter Douglas opinion. Third, the decisions in Eli Lilly and Du Pont specifically address the authority of the court to hear disputes arising under § 116. The Court is unconvinced that it should abandon the more recent and narrowly tailored precedent of Eli Lilly and Du Pont in favor of the unsupported dicta in Hunter Douglas.[2]

---

[2] Later in this Order, it will become apparent that Hunter Douglas can be reconciled with Eli Lilly and Du Pont. In Hunter Douglas, the Federal Circuit observed that subject matter jurisdiction

9

Stevens cites one other case in support of his argument that the Court has subject matter jurisdiction over his lawsuit: Heinken Technical Services, B.V. v. Darby, 103 F.Supp.2d 476 (D. Mass. 2000). However, the decision in Heinken relies solely upon the Federal Circuit's decision in Hunter Douglas. Heineken, 103 F.Supp.2d at 479. Based on the Court's finding that the Hunter Douglas decision is not adequately supported on this point, the Court is unpersuaded by the Heineken decision.[3]

The Court finds that the present case is closely analogous to a recent decision by a Maine district court. In Sagoma Plastics, Inc. v. Gelardi, 366 F.Supp.2d 185, 186 (D. Me. 2005), the plaintiff sought a declaration that he was the joint inventor of the subject matter of the defendant's patent application. In deciding whether the federal patent law empowers federal courts to determine questions of inventorship prior to the issuance of a patent by the PTO, the district court began by observing that § 116 does not explicitly provide a private right of action. Sagoma, 366 F.Supp.2d at 187. Like the Sixth Circuit in Du Pont, the Maine district court compared § 116 to the parallel provision of § 256 to determine whether Congress intended to provide a private right of action for plaintiffs seeking to amend patent applications

---

exists pursuant to 28 U.S.C. § 1338(a) over inventorship issues arising under § 116. In Eli Lilly and Du Pont, the appellate courts considered whether § 116 creates a private cause of action for the amendment of patent applications to correct alleged errors in inventorship. The question of whether this Court has subject matter jurisdiction over Stevens' claims is separate from this Court's determination that § 116 does not create a private cause of action. Accordingly, the Court is not declining to follow the Hunter Douglas decision, but rather finds that it is not applicable to the question of whether federal law empowers a federal court to resolve inventorship disputes in a pending patent application.

[3]Subsequent district court decisions have been similarly unpersuaded by the Hunter Douglas and Heineken decisions: Concrete Washout Systems, Inc. v. Minegar Environmental Systems, Inc., 2005 WL 1683930 (E.D. Ca. July 12, 2005); Murray v. Gemplus International, S.A., 2002 WL 32107942 (E.D. Pa. October 31, 2002); Display Research Laboratories, Inc. v. Telegen Corporation, 133 F.Supp.2d 1170, 1173-74 (N.D. Ca. 2001); and Mieling v. Norkar Technologies, Inc., 176 F.Supp.2d 817 (N.D. Ill. 2001).

10

to correct alleged errors in inventorship. Id. The court observed that "unlike the process described in § 116, the provision authorizing the correction of issued patents explicitly delineates a role for the courts as well as the Director." Id. at 188. The district court found that:

> [T]his clear delegation of power to the courts in § 256 casts serious doubt upon the courts' power to adjudicate inventorship under § 116. It is obvious from the parallel language of § 116 and § 256 that Congress drafted them to be complementary. The provisions contain identical requirements of 'error' on the application and lack of 'deceptive intention' on the part of the nonjoined or misjoined inventor. The language of the two provisions diverges only insofar as the requirements of each provision are substantively different. Given the structural parallels between the two provisions, it can be inferred that Congress' clear delegation of power to the courts in § 256 to correct issued patents and its failure to make any such express delegation in § 116 indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued.

Id. The district court further found that the Heineken decision, and by implicit extension the Hunter Douglas opinion, was inapplicable because it did not discuss whether § 116 creates a private right of action for nonjoined inventors. Id.

Here, Stevens seeks a declaration that he is either the sole or joint inventor of the fluid blending apparatus which is the subject of the Defendant's patent. As Stevens seeks a declaratory judgment regarding inventorship in a patent application, rather than an issued patent, his claims arise under § 116, rather than § 256. Persuaded by the Maine district court's reasoning, this Court adopts the analysis set forth in Sagoma to conclude that Congress did not intend to provide a private right of action for claims arising under § 116. As Congress did not intend to provide a private right of action for claims arising under § 116, Stevens' claims fail.

The Court's finding that it may not resolve questions of inventorship in pending patent applications recognizes the authority of the PTO to evaluate and issue patents. As noted by one district court, "[t]he

11

PTO has expertise in resolving inventorship disputes over claims in patent applications" and is, therefore, a better forum to determine whether Stevens is the sole or joint inventor of the fluid blending apparatus. *See* Mieling, 176 F.Supp.2d at 819-20.

Furthermore, "[t]he statutory scheme seems to have been developed with the understanding that adjudicating claims over inventorship in patent applications would disrupt the patent application system." Concrete Washout Systems, 2005 WL 1683930 at *4. Allowing disputes over inventorship in pending patent applications to be heard in federal court would create "premature" and "futile" litigation because while the patent is still in the gestation process, the PTO has the authority to alter or amend the patent application. Du Pont, 344 F.3d at 584. Inventorship disputes in pending patents may be addressed by the PTO pursuant to § 116 as discussed above. Alternatively, a party challenging inventorship in a patent application is empowered to file an interference proceeding pursuant to 35 U.S.C. § 135. Finally, following the issuance of the patent, a party challenging inventorship may file an action pursuant to § 256 to amend the issued patent. With regard to this final option, the party challenging inventorship "suffers only delay from this court's decision to let the PTO patent application review process run its natural course, whereas, reaching the inventorship issues now would be a waste of judicial resources." Concrete Washout Systems, 2005 WL 1683930 at *4. Accordingly, this Court finds that it is not empowered to adjudicate Stevens' claims and, therefore, the present action must be dismissed.

### C. *Stevens' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.*

The final question in the Court's analysis of the present Motion to Dismiss is whether the case should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure

12

to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). This issue was also analyzed in Sagoma, 366 F.Supp.2d at 190. The district court in Sagoma observed that 28 U.S.C. § 1338(a) does not create a private right of action but rather "merely allows federal courts to hear causes of action independently created by Congress in federal patent law." Id. (internal citations omitted). Accordingly, the Sagoma court concluded, it did not have jurisdiction pursuant to 28 U.S.C. § 1338(a) because Congress did not create a private right of action to resolve questions of inventorship in patent applications. Id. However, the Sagoma court found that it did have jurisdiction over the plaintiff's claims because "where a plaintiff asserts that a private right of action is implied from federal law, federal courts do have the requisite subject matter jurisdiction to determine whether such a federal remedy exists." Id. (internal citations omitted). Given the court's ruling that § 116 does not create a private right of action, and the fact that the plaintiff sought a declaratory judgment of inventorship rather than relief directly under § 116 did not alter this analysis, the court concluded that the plaintiff's claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Id. at 189, 190.

As noted above, this Court finds the Sagoma decision highly persuasive and, therefore, adopts its analysis on this question as well. Accordingly, this Court finds that although jurisdiction is not proper pursuant to 28 U.S.C. § 1338(a), it has the authority to hear Stevens' claims because Stevens asserts that he has a private right to relief implied from federal law. The Court has concluded that federal law does not provide Stevens with a cause of action in federal court to resolve a dispute over inventorship in a pending patent application. Accordingly, Stevens' claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as he has failed to state a claim upon which relief may be granted.

13

Stevens' remaining claims for fraud, fraud before the PTO, improper assignment, and misappropriation of trade secrets are all state law claims that are premised on Stevens' assertion that he is either the sole or joint inventor of the fluid blending apparatus which the Defendants seek to patent. These claims require the Court to resolve questions of inventorship in a pending patent application before granting the relief sought. The Court's resolution of the inventorship dispute, prior to the issuance of the patent by the PTO, gives rise to the risk of an inconsistent determination of inventorship. As the Court has determined that the PTO is the proper forum for resolving questions of inventorship in pending patent applications, these claims will also be dismissed.

## CONCLUSION

The gravamen of Stevens' lawsuit is that the Defendants failed to acknowledge his inventive efforts by neglecting to name him either as the sole, or alternatively a joint, inventor in the patent application for the fluid blending apparatrus. Section 116 governs the amendment of inventorship designations in a patent application. In § 116, Congress did not provide a private right of action in federal court to resolve inventorship disputes in patent applications but rather vested the Director of the PTO with the sole authority to correct inventorship errors in patent applications. This Court would usurp the PTO's authority to decide questions of inventorship in patent applications if it decided whether Stevens was the sole, or joint, inventor of the fluid blending apparatus. As federal law does not provide Stevens with a cause of action in federal court to resolve an inventorship dispute in a pending patent application, Steven's claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. As Stevens' remaining claims require resolution of the inventorship dispute, they must also be dismissed. Based on the foregoing, the Defendants' Motion to Dismiss is GRANTED.

14

**IT IS HEREBY ORDERED.**

                                                  /s/ Gary A. Fenner
                                                  GARY A. FENNER, JUDGE
                                                   United States District Court

DATED: **May 31, 2006**